UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

OTIS DEMETRICE ALLEN,

                    Plaintiff,

v.                                                    Case No. 2:24-cv-170

                                                      Honorable Jane M. Beckering

UNKNOWN JOHNSON et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Johnson, Matt, Perry, and Schroeder for failure to state a claim. The Court will also dismiss Plaintiff's state law claims against Defendants Johnson, Matt, Perry, and Schroeder without prejudice because the Court declines to exercise supplemental jurisdiction over them. Plaintiff's Eighth Amendment claim against Defendant Nebel for the use of excessive force and Plaintiff's state-law tort claim against Defendant Nebel for assault and battery remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MBP Correctional Officers Unknown Johnson, Unknown Matt, and Unknown Nebel, and MBP Sergeant Perry in their individual capacities. Plaintiff also sues MBP Warden Sarah Schroeder in her official and individual capacity.

Plaintiff's "Statement of Claim" is broken down into two sections. (*See* Compl., ECF No. 1, PageID.3–7.) The first section (*id.*, PageID.3–4, ¶¶ 1–8.) offers one paragraph summaries of each of Plaintiff's claims. The second section (*id.*, PageID.4-7, ¶¶ 9–40) provides the factual detail upon which the claims are based.

Plaintiff describes a cascade of events that began on February 15, 2024.[1] (*Id.*, PageID.4.) On that date, Plaintiff asked Defendant Johnson for pens, envelopes, and grievances. (*Id.*) Johnson responded rudely, informing Plaintiff that Johnson would not do anything for Plaintiff because he had just arrived at work and was still tired. (*Id.*) Plaintiff told Johnson that it was his "job and duty to provide [Plaintiff] with pens, grievances and envelopes." (*Id.*)

That did not go over well with Johnson. Johnson told Plaintiff that Johnson "don't give a fuck [and that Johnson would] do what he want[ed]." (*Id.*) That did not go over well with Plaintiff. Plaintiff told Johnson to go "fuck himself" and to step inside Plaintiff's cell "if he doesn't like it."

---

[1] The Court notes that Plaintiff's blow-by-blow recounting of these events, months after the fact, is particularly thorough.

(*Id.*) Plaintiff explains that by saying that he was "[b]asically indicating to Johnson that Plaintiff would like to fight [Johnson] one on one." (*Id.*)

Johnson began to walk off. (*Id.*) Apparently dissatisfied with that response, Plaintiff pushed his cell door food slot open and informed Johnson that Plaintiff "was going to hold his food slot hostage[2] until Johnson provide[d] [Plaintiff] with pens, envelopes, and grievances." (*Id.*) Johnson yelled back that Plaintiff was going to get "fucked up" for holding his food slot hostage. (*Id.*) Johnson then left. (*Id.*)

About ten minutes later, Johnson returned accompanied by Defendants Matt and Nebel. (*Id.*) Defendant Matt carried a set of "belly chain restraints." (*Id.*) Defendant Matt instructed Plaintiff to "cuff up." (*Id.*) Plaintiff asked what the chains were for. (*Id.*) Defendant Matt responded: "[j]ust making it look good for the camera." (*Id.*) That response surprised Plaintiff because he did not think that the corrections officers would take him up on his offer to fight. (*Id.*) Plaintiff "got nervous" because he did not really want to "fight with Johnson, let alone three guys." (*Id.*) Nonetheless, Plaintiff went to the door and let Defendant Matt secure both of his wrists with the cuffs. (*Id.*)

At that moment, Plaintiff's intuition told him that the officers were not going to undo the chain and cuffs when they came in to fight him. (*Id.*) So, instead of permitting Matt to secure the belly chains, Plaintiff snatched them away and went to the back of his cell. (*Id.*)

---

[2] An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g., Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011*), R&R adopted* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).

Plaintiff told the officers to call the sergeant, the emergency response team, or come in and risk looking bad on camera and getting in trouble. (*Id.*, PageID.5.) Plaintiff notes that the cell door was still closed and locked at that time. (*Id.*)

Defendant Matt looked at Plaintiff and said "This is how you want to play it? Okay, you['re] on." (*Id.*) Defendant Matt unlocked Plaintiff's cell door and entered the cell. (*Id.*) Plaintiff contends that Defendant Matt did so without any legitimate reason because Plaintiff was not an immediate threat to himself or anyone else and that Defendant Matt did not contact either shift command or an emergency response team. (*Id.*) Defendants Nebel and Johnson followed Matt into the cell. (*Id.*)

Defendant Matt "rushed" Plaintiff and grabbed at him. (*Id.*) Plaintiff backed away from Defendant Matt to the other side of the cell. (*Id.*) Defendant Matt grabbed Plaintiff and took him to the ground. (*Id.*) Plaintiff was struck in his face by one of the three officers and his head hit the security glass on the door. (*Id.*)

Defendants Matt, Nebel, and Johnson got on top of Plaintiff. (*Id.*) Defendant Johnson or Defendant Nebel kneed Plaintiff in his abdomen area. (*Id.*) Defendant Matt had Plaintiff's right wrist in a wrist lock, applying pressure to it like he intended to break it. (*Id.*) Plaintiff rolled to his side to relieve the pressure from Defendant Matt's wrist lock. (*Id.*) Defendant Nebel pushed his fist into Plaintiff's esophagus, cutting off Plaintiff's airway. (*Id.*) Plaintiff turned his head in an attempt to get some air and tried to choke out "words of pleas." (*Id.*)

Defendant Nebel told Plaintiff that he "should've shut the fuck up and [he] wouldn't be in this predicament." (*Id.*) Defendant Nebel relieved the pressure on Plaintiff's throat and told him to lie still. (*Id.*)

Plaintiff complied. (*Id.*) Defendant Nebel took his fist completely off Plaintiff's throat and Nebel placed his hand on Plaintiff's head. (*Id.*) Defendant Matt stopped applying pressure to Plaintiff's wrist. In Plaintiff's words "[t]he whole ass[au]lt stopped." (*Id.*)

Defendant Matt told Plaintiff to keep still. (*Id.*) Defendant Matt unlocked the cuffs to the belly chains and then removed them. (*Id.*) Defendants rolled Plaintiff on to his stomach. (*Id.*) Defendants debated whether to handcuff Plaintiff. (*Id.*) Either Defendant Matt or Defendant Johnson said to "just leave him." (*Id.*) Defendants Matt and Johnson left the cell. (*Id.*)

Defendant Nebel still had Plaintiff pinned. (*Id.*) He looked back to the door while Defendants Matt and Johnson exited the cell. (*Id.*) Nebel told Plaintiff "don't get up, stay where you are." (*Id.*) Defendant Nebel relieved the pressure on Plaintiff's head. (*Id.*) Defendant Nebel began to stand up. (*Id.*) As he did, Plaintiff began to scramble in an attempt to get to his feet. (*Id.*) Before Plaintiff could get up, Defendants Nebel, Matt, and Johnson responded, placing Plaintiff back on his stomach. (*Id.*) They handcuffed Plaintiff behind his back. (*Id.*)

Defendants pulled Plaintiff up and dragged him over to the bed. (*Id.*, PageID.6.) Plaintiff was bent over the bed with his face and chest on the bed and his knees on the floor. (*Id.*) Defendants Matt and Nebel were behind Plaintiff. (*Id.*) Defendant Nebel asked Plaintiff "you want [some] more?" (*Id.*) Defendant Nebel started applying pressure to the area behind Plaintiff's left ear. (*Id.*) Plaintiff yelled and then told Defendant Nebel "the cameras are watching dumbass, look!" (*Id.*) Defendant Nebel looked at the cameras outside Plaintiff's cell and instantly stopped applying pressure. (*Id.*)

Defendant Perry then popped his head into Plaintiff's cell. (*Id.*) Plaintiff told Defendant Perry that Defendants Nebel, Matt, and Johnson had just assaulted Plaintiff and had entered Plaintiff's cell for no reason. (*Id.*) Defendant Perry told Plaintiff that he was lying. (*Id.*) Then all

the Defendants left the cell and the door was locked. (*Id.*) Plaintiff was directed to back up to the

food slot for the cuffs to be unlocked and removed. (*Id.*) Plaintiff complied. (*Id.*)

A short time later, nursing staff examined and treated Plaintiff for scratches and swelling

for further evaluation and treatment. (*Id.*) The medical provider diagnosed a right wrist sprain.

(*Id.*)

Defendant Matt wrote Plaintiff a misconduct ticket for assault and battery and disobeying

a direct order. (*Id.*) Plaintiff contends that Defendant Matt "fabricated" the ticket. (*Id.*) Plaintiff

notes that Defendant Matt wrote that he was conducting a search of Plaintiff's cell and that Matt

was unable to secure the padlock on the belly chain restraints and that is why he unlocked

Plaintiff's door. (*Id.*) Defendant Matt noted that when he opened the door Plaintiff pulled away

from Matt so he placed Plaintiff on the ground. (*Id.*) Defendant Matt claimed that Plaintiff was

kicking and pulling away from Matt while Plaintiff was on the ground. (*Id.*) Plaintiff states:

> At no time did Matt open [Plaintiff's] door before [Plaintiff] pulled away. At no
> time did officers notify [Plaintiff] that they were there to conduct a cell search. And
> at no time did [Plaintiff] kick at officers or assault officers.

(*Id.*) Defendant Perry reviewed the misconduct report with Plaintiff on the night of the incident.

(*Id.*) Plaintiff was ultimately found guilty of the misconduct. (*Id.*) He was given "loss of privileges"

sanctions and extra time in segregation. (*Id.*)

Plaintiff notes that Defendant Perry never removed Defendant Matt from Plaintiff's unit

that night and Plaintiff believes that Defendants Nebel and Johnson remained on the unit as well.

(*Id.*) Several days later, Plaintiff complained to Defendant Schroeder about the incident. (*Id.*) She

told him that Defendants acted within their rights. (*Id.*) Plaintiff explained his fear that because

Defendants remained on the unit he might suffer retaliation or another assault. (*Id.*) Plaintiff notes

that Defendant Schroeder simply walked off. (*Id.*)

Plaintiff states that, to his knowledge, Defendant Schroeder never reprimanded the Defendants, and they were still allowed to work in Plaintiff's unit. (*Id.*) Plaintiff claims that at some later time Defendant Matt wrote Plaintiff "another fabricated misconduct report" for threatening behavior and disobeying a direct order. (*Id.*, PageID.6–7.) Plaintiff was found guilty of the reported misconduct and sanctioned again with "loss of privileges" and additional segregation time. (*Id.*, PageID.7.)

Plaintiff contends that Defendant Johnson violated Plaintiff's First Amendment rights by refusing Plaintiff's requests for writing supplies and grievance forms, thereby preventing Plaintiff from exhausting his administrative remedies. Plaintiff claims that Defendant Johnson, Matt, and Nebel used excessive force against Plaintiff in violation of the Eighth Amendment. Plaintiff claims the same conduct constitutes the state-law torts of negligence, assault and battery, and infliction of emotional distress. Plaintiff claims that Defendant Perry is liable for the excessive force used by Defendants Johnson, Matt, and Nebel because Perry failed to properly supervise and monitor those Defendants. Plaintiff claims that Defendant Perry was also negligent and inflicted emotional distress under state law. Plaintiff contends that Defendant Schroeder violated the Eighth Amendment by failing to supervise and monitor MBP operations and by failing to keep Defendants Johnson, Matt, and Nebel away from Plaintiff after Plaintiff notified Schroeder of the cell incident. Plaintiff claims that Schroeder's failures also constitute the torts of negligence and infliction of emotional distress. Finally, Plaintiff complains that Defendant Matt filed a fabricated misconduct after the cell incident to conceal the excessive force used by Defendants Johnson, Matt, and Nebel. Plaintiff contends that Defendant Matt's false misconduct constitutes intentional infliction of emotional distress under state tort law.

For relief, Plaintiff seeks the following: (1) a declaration that Defendants have committed constitutional violations and state-law torts as he has alleged; (2) an injunction compelling Defendant Schroeder to expunge the disciplinary misconduct and "loss of privileges" sanctions off Plaintiff's record; and (3) approximately $7,500,000.00 in compensatory and punitive damages for the physical and emotional injuries he has suffered. (*Id.*, PageID.9.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.  Discussion

### A.  Violation of the First and Fourteenth Amendments Through Interference with the Grievance Process by Defendant Johnson (Compl., ECF No. 1, PageID.9, ¶ 1)

Plaintiff contends that Defendant Johnson's refusal to provide pens, paper, and grievance forms frustrated Plaintiff's efforts to exhaust administrative remedies and violated Plaintiff's First Amendment rights. (Compl., ECF No. 1, PageID.3, ¶ 1; *see id.*, PageID.9, ¶ 1.) Although Plaintiff presents this claim as purely a First Amendment violation, such claims often go hand-in-hand with due process claims under the Fourteenth Amendment. For that reason, the Court will also consider Plaintiff's factual allegations under the Due Process Clause.

As an initial matter, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907,

at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Defendant Johnson's failure to provide Plaintiff with writing supplies or forms also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016)

(reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

For all of these reasons, Plaintiff has failed to state a claim that Defendant Johnson violated Plaintiff's constitutional rights by refusing to provide grievance writing supplies upon Plaintiff's request.

**B.      Violation of the Eighth Amendment Through the Use of Excessive Force by Defendants Matt, Johnson, and Nebel (Compl., ECF No. 1, PageID.9, ¶ 2)**

Plaintiff claims that the actions of Defendants Matt, Johnson, and Nebel violated Plaintiff's Eighth Amendment rights because Defendants used "excessive force" in Plaintiff's cell. (Compl., ECF No. 1, PageID.3; *see id.*, PageID.9, ¶ 2.) According to Plaintiff, the use of force "was so strikingly disproportionate to the circumstances that it was imposed to cause harm rather than to restore or maintain order." (*Id.*)[3]

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation.

---

[3] When conducting this initial review, the Court must "accept all well-pleaded allegations in plaintiff's complaint as true and view facts in the light most favorable to plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Plaintiff's allegations that the force was "excessive," "disproportionate," or "imposed to cause harm" state legal conclusions, not facts. The "facts" regarding the incident are set forth in paragraphs 9–35 of Plaintiff's complaint. (Compl., ECF No. 1, PageID.4–6.)

*Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When

prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Plaintiff's allegations support the inference that force was necessary to restore order. Plaintiff expressed a desire to fight Defendant Johnson. When Defendant Johnson walked away, Plaintiff took his food slot hostage. Defendant Johnson then returned with Defendants Matt and Nebel to restrain Plaintiff. Plaintiff allowed Defendant Matt to cuff Plaintiff's wrists, but when Matt attempted to secure the belly chains, Plaintiff "snatched the chains from Matt and went to the back of his cell." (Compl., ECF No. 1, PageID.4.) Defendant Matt entered Plaintiff's cell, followed by Defendants Johnson and Nebel. Defendant Matt attempted to grab Plaintiff, but Plaintiff backed away. Eventually Defendant Matt was able to grab Plaintiff and took him to the ground. One of the officers struck Plaintiff in the face. Defendant Johnson or Defendant Nebel kneed Plaintiff in the abdomen. Defendant Matt put Plaintiff's right wrist in a wrist lock. Defendant Nebel pushed his fist into Plaintiff's esophagus cutting off his airway. When Plaintiff "complied with Nebel's order to stay still . . . the whole assault stopped." (*Id.*, PageID.5.) Defendant Matt removed the cuffs. Defendants rolled Plaintiff on to his stomach and Defendant Nebel placed his fists or his shin on Plaintiff's head to hold him in place. Defendants debated handcuffing Plaintiff, but decided to "just leave him." (*Id.*) Defendants Matt and Johnson left the cell.

Defendant Nebel continued to hold Plaintiff in place and instructed Plaintiff: "Don't get up. Stay where you are." (*Id.*) Defendant Nebel released Plaintiff. Plaintiff immediately attempted to scramble to his feet. All three Defendants responded by placing Plaintiff back on his stomach and, this time, they handcuffed Plaintiff behind his back. Defendants pulled Plaintiff over to the bed so that his face and chest were on the bed and he was kneeling on the floor. Defendant Nebel

asked "you want [some] more?" (*Id.*, PageID.6.) Defendant Nebel then applied pressure to the pressure point behind Plaintiff's left ear. Plaintiff started yelling, and Defendant Nebel released the pressure.

Up to the point that Defendants placed Plaintiff on the bed, based on Plaintiff's allegations, Defendants used force to compel Plaintiff to comply with specific directions. Plaintiff alleges no facts that support an inference that those uses of force were malicious and sadistic. Indeed, Plaintiff's allegations support the opposite inference: that the force was used to compel Plaintiff's compliance to Defendants' direction in a good faith effort to restore order. The only possible exception at that point is Defendant Nebel's use of pressure on Plaintiff's esophagus. Defendant Nebel stopped when Plaintiff complied, and the Sixth Circuit has concluded that a brief chokehold, such as the one employed by Nebel here, can be an appropriate use of force when compelling a prisoner's compliance or to stop a prisoner from resisting. *See, e.g.*, *Johnson v. Sootsman*, 79 F.4th 608, 619–20 (6th Cir. 2023); *Whyde v. Sigsworth*, No. 22-3916, 2024 WL 4647914, at *3 (6th Cir. Sept. 3, 2024). Under the circumstances Plaintiff describes, however, this potentially deadly use of force might also be considered excessive. *See, e.g.*, *King v. City of Rockford*, 97 F.4th 379, 400 (6th Cir. 2024).

Additionally, Defendant Nebel's use of a pressure point after Plaintiff had been handcuffed behind his back and was kneeling by his bed might be considered malicious. "In this Circuit, the law is clearly established that an officer may not use additional gratuitous force once a suspect has been neutralized." *Morrison v. Bd. of Trustees of Green Tp.*, 583 F.3d 394, 408 (6th Cir. 2009) (internal quotation marks and citation omitted).

Plaintiff has not alleged facts that support an inference that Defendants Matt or Johnson used excessive force against Plaintiff. Accordingly, Plaintiff has failed to state a claim against

Defendants Matt or Johnson relating to the cell incident. With regard to Defendant Nebel, however, Plaintiff has alleged facts that plausibly support an inference that Defendant Nebel's use of his fist on Plaintiff's esophagus during the initial takedown, and his placement of pressure on a pressure point after Plaintiff has been subdued, constitute excessive force. Accordingly, the Court cannot dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Nebel.

### C. Violation of the Eighth Amendment Through the Use of Excessive Force Against Defendant Perry Because of His Failure to Properly Supervise and Monitor Defendants Johnson, Matt, and Nebel (Compl., ECF No. 1, PageID.9, ¶ 3)

Plaintiff contends that Defendant Perry is liable for the damages Plaintiff suffered at the hands of Defendants Johnson, Matt, and Nebel because Perry failed to properly supervise and monitor those Defendants. Plaintiff's factual allegations relating to Perry indicate that Perry became involved only after Defendant Nebel stopped applying pressure to Plaintiff's pressure point. The allegations, in their entirety, are as follows:

> 31.    Defendant Perry then entered or popped his head into [Plaintiff's] cell. [Plaintiff] notified [Perry] that [Plaintiff] was just assaulted by all three of the officers, and that they came in his room with no reasoning. Perry told [Plaintiff] that [Plaintiff] was lying.

> * * *

> 34.    [Plaintiff] was reviewed that night by Sgt. Perry for a[n] assault and battery/disobeying a direct order [report] on Matt.

> * * *

> 36.    Defendant Perry did not remove the Defendant Matt from E Unit that night, and upon [Plaintiff's] belief the other Defendants were still in the unit that night after the incident.

(Compl., ECF No. 1, PageID.6.)

Government officials, such as Defendant Perry, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious

liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). And § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or appeal, or failed to act based upon information contained in a grievance or appeal. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendant Perry encouraged or condoned the conduct of Defendants Johnson, Matt, or Nebel, or authorized, approved, or knowingly acquiesced in the conduct before the incident occurred. Perry appeared after the "use of force" was complete and only disagreed with Plaintiff's statement that Defendants had no reason to enter Plaintiff's cell.

It is not impossible that a supervisor might become actively involved after the fact. *See, e.g.*, *Peatross*, 818 F.3d at 243 (discussing that a supervisor might be liable where he "attempted to cover-up the unconstitutional conduct of his subordinates by exonerating the officers in an effort to escape liability"); *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (discussing that a sheriff might be liable for the conduct of subordinates where he "intentionally and deliberately made false statements to federal officials about [his] knowledge of [the] assault"). But even that standing alone would not be enough because the "active unconstitutional behavior on the part of the supervisor" must be "directly correlated with the plaintiff's injury." *Venema v. West*, __ F.4th __, 2025 WL 999945, at *5 (6th Cir. Apr. 3, 2025). Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that Defendant Perry was personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Perry is properly dismissed.

### D. Eighth Amendment Failure to Protect Plaintiff From Defendants Johnson, Matt, and Nebel Following Plaintiff's Giving Notice of the Assault Incident "Days Later" to Defendant Schroeder (Compl., ECF No. 1, PageID.6, ¶ 37)

Plaintiff claims that Defendant Schroeder violated Plaintiff's Eighth Amendment rights by failing to keep Defendants Johnson, Matt, and Nebel away from Plaintiff after Schroeder was notified—days  after the incident—of the incident in Plaintiff's cell.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has

been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). This standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

As set forth in Plaintiff's complaint, the Defendants' uses of force in Plaintiff's cell were not simply random acts of violence. They followed Plaintiff's threats, disciplinary violations, and failures to comply. Plaintiff does not explain how the Defendants' uses of force in that context pose a continuing threat to him. Indeed, Plaintiff does not allege any facts that suggest he has suffered any threat to his health or safety from Defendants Johnson, Matt, or Nebel since that

incident. That is so even though months passed between the incident and the date he filed his complaint. Plaintiff has not alleged any facts that permit an inference that he was incarcerated under conditions that posed a substantial risk of serious harm at the time, or after, he notified Defendant Schroeder of the incident. Plaintiff has similarly failed to allege any facts that permit an inference that Defendant Schroeder was aware that Plaintiff was incarcerated under conditions that posed a substantial risk of serious harm or that Defendant Schroeder disregarded any such risk. Accordingly, Plaintiff has failed to state an Eighth Amendment failure to protect claim against Defendant Schroeder.[4]

### E.    Misconduct Sanctions

Plaintiff indicates that Defendant Matt filed an assault and battery/disobeying a direct order misconduct report against Plaintiff relating to the cell incident. (Compl., ECF No. 1, PageID.6, ¶ 34.) Plaintiff alleges that Defendant Matt filed another misconduct report against Plaintiff for threatening behavior/disobeying a direct order. (*Id*., PageID.6–7, ¶ 39.) Plaintiff does not indicate when the second misconduct report was filed.

Both reports would have been Class I misconducts under the MDOC disciplinary scheme. *See* MDOC Policy Directive 03.03.105, Prisoner Discipline, Att. A (eff. Mar. 17, 2025). Both would have been heard and resolved by a hearing officer rather than MDOC facility staff. Mich. Comp. Laws § 791.251 *et seq*. The factual findings at such a hearing, under the proper circumstances, would have preclusive effect in this Court. *See Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018). Plaintiff was found guilty on both reports. He also claims that both reports were "fabricated." (Compl., ECF No. 1, PageID.6–7, ¶¶ 34, 39.)

---

[4] To the extent Plaintiff claims Defendant Schroeder is liable because of her supervisory position over the other Defendants, that claim would fail for the same reasons Plaintiff's supervisory claims against Defendant Perry fell short. *See supra* Section III.C.

It appears that Plaintiff's purpose in alleging facts relating to the "fabricated" misconduct reports is to support his state tort "intentional infliction of emotional distress" claim. (*Id.*, PageID.4, ¶ 8.) To the extent that support of his tort claim is Plaintiff's only purpose, the claim is addressed in the state law claims section below. Nonetheless, it is possible that Plaintiff offers these facts in support of a Fourteenth Amendment due process claim or a First Amendment retaliation claim. If that is the case, Plaintiff has failed to state those claims.

### 1. Fourteenth Amendment Due Process Claim Against Defendant Matt for Fabricating a Misconduct Report

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a

liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim*, 461 U.S. at 250.

Here, Plaintiff alleges that the consequences he suffered as a result of the "fabricated" misconduct reports included the loss of privileges and additional time in segregation. Plaintiff does not allege that the misconduct convictions impacted the duration of his sentence, and he cannot allege this because the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence). And the additional time in segregation or the loss of privileges sanction that Plaintiff received do not constitute an "atypical and significant hardship," as contemplated by *Sandin*. 515 U.S. at 484; *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs). Therefore, Plaintiff fails to state a procedural due process claim regarding his misconduct convictions.

### 2.    First Amendment Retaliation Claim Against Defendant Matt for Fabricating a Misconduct Report

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the

plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben*, 887 F.3d at 265; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Plaintiff does not allege that he filed any grievances; but he did voice an oral complaint to Defendant Perry that Defendants Johnson, Matt, and Nebel assaulted him. He voiced a similar complaint to Defendant Schroeder. At this stage of the proceedings, these allegations are sufficient to suggest that Plaintiff engaged in protected conduct for purposes of a First Amendment retaliation claim.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). The sanctions Plaintiff faced when found guilty of Class I misconduct violations are sufficiently adverse to satisfy the second element. *Maben*, 887 F.3d at 266–67.

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. Plaintiff does not allege facts that support an inference that Defendant Matt wrote the misconduct reports because of Plaintiff's complaints to Defendant Perry or Defendant Schroeder. Plaintiff's allegations of retaliatory motive are entirely conclusory. Plaintiff merely alleges the ultimate fact of retaliation without providing supporting factual allegations to even suggest that the alleged adverse actions were motivated by the protected conduct. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Accordingly, any intended First Amendment retaliation claims against Defendant Matt are properly dismissed for failure to state a claim.

## F.    Plaintiff's State Law Claims

Plaintiff claims that the Eighth Amendment violations alleged above also gave rise to state tort liability. Specifically, Plaintiff claims: (1) the actions of Defendants Johnson, Matt, and Nebel in Plaintiff's cell constituted assault and battery under state law, (Compl., ECF No. 1, PageID.9, ¶ 2); (2) Defendant Perry's failure to properly supervise the other defendants constitutes "supervisor negligence, negligence, and infliction of emotional distress," (*id*. ¶ 3); and (3) Defendant Schroeder's failure to keep Johnson, Matt, and Nebel away from Plaintiff after the

incident in Plaintiff's cell constitutes "supervisor negligence, negligence, respondeat superior, and infliction of emotional distress," (*id*. ¶ 4).

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166. Therefore, any assertion that Defendants violated state law or committed state-law torts fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants Johnson, Matt, Perry, and Schroeder will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Because Plaintiff continues to have a pending federal claim against Defendant Nebel, the Court will exercise supplemental jurisdiction over Plaintiff's state-law assault and battery tort claim against Defendant Nebel.

## <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by PLRA, the Court determines that Plaintiff's federal claims against Defendants Johnson, Matt, Perry, and Schroeder will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Johnson, Matt, Perry, and Schroeder will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them. Plaintiff's Eighth Amendment

claim against Defendant Nebel for the use of excessive force and Plaintiff's state-law tort claim against Defendant Nebel for assault and battery remain in the case.

       An Order consistent with this Opinion will be entered.


Dated:        __April 14, 2025__             __/s/ Jane M. Beckering_____
                                             Jane M. Beckering
                                             United States District Judge